IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE SEARCH OF:           )
                                          )        Mag. No. 21-136
THE RESIDENCE LOCATED AT 523 INDIANA      )        **[UNDER SEAL]**
STREET JOHNSTOWN, PA 15905                )

## AFFIDAVIT FOR SEARCH WARRANT

I, Ryan Palso, being first duly sworn, hereby depose and state as follows:

### I.      Introduction

1.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since October 2019.  Prior to my employment with the DEA, I was employed as a uniformed Police Officer on the federal and state levels of law enforcement, with my most recent employer being the Pittsburgh Bureau of Police.  I have been employed in a law enforcement capacity since February 2014.  As a Police Officer, I have participated in numerous arrests for narcotic offenses and violent crimes.  In addition, I have been the affiant on search warrants and arrests.  I am currently assigned to the Pittsburgh District Office for the DEA.

2.      I have been trained at the Federal Law Enforcement Training Center in Glynco, GA, Pittsburgh Bureau of Police Academy in Pittsburgh, PA, and at the DEA Academy in Quantico, VA.  The DEA Academy provided extensive training that lasted for four months and covered a wide array of topics, including federal criminal statutes, interviews and interrogations, drug identification, search and seizure, undercover techniques, search warrant applications and executions, arrest procedures, and numerous other investigative techniques.

3.      As a Special Agent with the DEA, I have experience and am responsible for investigating violations of federal laws, specifically Title 21 of the United States Code offenses.  Based on my training and experience, I know that it is a violation of Title 21 of the United States

Code, Sections 841(a)1 and 841(b)(1)(c) to manufacture, distribute or dispense, or possess with intent to distribute a controlled substance.

4.      The information in this affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.      The Search Location

5.      This affidavit is submitted in support of a warrant to search the residence, curtilage and outbuildings located at 523 Indiana Street, Johnstown, PA 15905 (referred to hereafter as the "**RESIDENCE**");

6.      The **RESIDENCE** is described more fully in Attachment A.  The applied for warrant would authorize the search of the **RESIDENCE** and the seizure of evidence described in Attachment B.

## III.      Probable Cause

### A.  Prior Orders

7.      On August 4, 2021, United States Magistrate Judge Keith Pesto issued two search warrants and a Criminal Complaint and Arrest Warrant for the arrest of Gregory Brown.

8.      The first warrant authorized the search of the residence and curtilage located at 527 Wood Street, Johnstown, PA 15902.  That warrant is docketed at Magistrate Number 3:21-133 MJ.

9.      The second warrant authorized the search of the person of Gregory Brown.  That warrant is docketed at Magistrate Number 3:21-134 MJ.

10.     The Criminal Complaint, which charges Gregory Brown with violating Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), and (b)(1)(C) is docketed at Magistrate Number 3:21-135 MJ.

11.     Your affiant hereby incorporates the documents filed at 3:21-133 MJ, 3:21-134 MJ, and 3:21-135 MJ by reference as if the same were set forth herein in their entirety.

### B.  Search of 527 Wood Street and Arrest of Gregory Brown

12.     Shortly after 6:00 a.m. on August 5, 2021, agents from the DEA approached the residence located at 527 Wood Street, Johnstown, PA 15902.  Agents knocked and announced their presence.  After a few minutes' delay, an individual came to the door.  Agents detained the individual, secured the residence, and began their search.  Gregory Brown was not located at the residence.

13.     Agents identified the individual as Julian Navarro.

14.     During the search of the residence, agents found and seized a Mason jar containing large chunks of a white substance in the kitchen (see below).



15.     Agents performed a field test on the substance which returned a positive result for methamphetamine.

16.     While the search was ongoing, agents asked Navarro if he knew where Brown may be located.  Navarro advised that he believed Brown may be located at Indiana Street.  Your affiant knows that Brown is in the business of renovating properties in the Johnstown area and that 523 Indiana Street, Johnstown, PA 15905 is a residence with which Brown is associated.

17.     Agents responded to 523 Indiana Street, Johnstown, PA 15905 and asked a neighbor if they knew who lived there.  The neighbor advised that "Greg" lived there with a 16 year-old boy.

18.     Agents proceeded to 523 Indiana Street, Johnstown, PA 15905 and knocked on the door.  While outside, agents could hear loud banging or thumping noises coming from the basement of the home.

19.     After several minutes, Brown answered the door and was taken into custody. Brown was visibly sweaty, out of breath, and had a white powdery substance on his knee.  Brown was not fully clothed when he answered the door.  Before entering the residence to retrieve clothing for Brown to wear for his transport, agents asked Brown if there were any other individuals in the residence.  Brown advised that his son was inside.  Agents conducted a protective sweep of the residence.  While clearing the basement, agents observed a hammer with white powder residue and empty vacuum sealed bags with residue.

20.     Once the residence was secured, agents sat Brown in the dining room area to retrieve his clothing.  While seated, Brown requested a drink of water.  Agent Robert Cross entered the kitchen to get Brown a glass of water and observed four boxes of ammunition in plain view. Agent Cross remarked, "we have some bullets over here."  Brown responded, "yeah, I got a gun

in the basement, too." Agent Cross asked Brown where the gun was located. Brown stated that the gun was in the basement hidden inside a lawnmower.

21.     Agents proceeded to the basement and recovered a handgun from inside a lawnmower.

22.     Your affiant knows that Brown is a felon not to possess firearms based on his multiple convictions for possession with intent to deliver a controlled substance.

23.     Based on the evidence obtained during my investigation of Brown, I believe that Brown is engaged in the distribution and possession with intent to distribute controlled substances, namely, fentanyl and crystal methamphetamine. Further, based on the observations made at the time of Brown's arrest, I submit that there is probable cause to believe that there is probable cause to believe that evidence of Brown's drug distribution and/or unlawful possession of firearms is likely to be found at the **RESIDENCE**.

24.     In addition, I know, based on training and experience, that purchasing controlled substances often is conducted by cellular telephones and other electronic devices. This is common for dealers and buyers to contact each other to set up meet points, times, or negotiate amounts and prices. Additionally, details regarding importing, possessing, concealing, distributing controlled substances, and the disposition of proceeds from the sale of controlled substances are often used with cellular telephones.

25.     Since drug dealers and users rely heavily on cellular telephones, I know that evidence of their drug crimes can be found on cellular telephones. The communication between drug dealers and users can be either by placing a call or text messaging. Oftentimes, contact lists or other numbers associated with the drug dealer's organization will be found and further illustrate

the criminal conspiracy.  This evidence is crucial for law enforcement to be able to identify and arrest all individuals involved in a particular narcotics sale.

26.     I know that information is also saved on cellular telephones, both intentionally and unintentionally.  Specific text messages, contacts, pictures, and other media items can be saved intentionally.  Digital information, traces of electronic communication, or internet searches can be automatically stored unintentionally on cellular telephones.  A forensic examiner can conduct a phone analysis and recover evidence on the cellular telephone, information that was saved intentionally and unintentionally.  These electronic files can be recovered months or years after they were downloaded, stored, deleted, or viewed.

27.     I believe that there is probable cause that evidence of violation(s) of Title 21, United States Code 841 may be found on cellular phones belonging to and or/utilized by Brown.  I therefore seek authorization to seize any and all cellular telephone(s) and electronic devices found at the **RESIDENCE**.  A separate warrant will be submitted prior to examining the electronic contents of any seized phones/electronic devices.

## **CONCLUSION**

28.     Based upon the foregoing, I submit that this affidavit supports probable cause that Brown has engaged in violations of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 922(g)(1) in the Western District of Pennsylvania, and that evidence of those violations is likely to be found at the Residence.

*/s/ Ryan Palso*
Ryan Palso, Special Agent, DEA

Sworn and subscribed before me,
this 5th day of August, 2021.

_____
HONORABLE KEITH A. PESTO
UNITED STATES MAGISTRATE JUDGE